UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTINE AVERY, as Personal Representative of the Estate of Christopher Nault,<br><br>Plaintiff<br><br>v.<br><br>WELLPATH, LLC, formerly known as Correct Care Solutions; DOUGLAS HEDGPATH; DUSTIN HEDGPATH; MITCHELL HERRICK; and TRISTAN OBREMSKI,<br><br>Defendants | Case No. 2:20-cv-00428-DBH |

**MOTION TO DISMISS BY DEFENDANTS DOUGLAS HEDGPATH,
DUSTIN HEDGPATH, AND MITCHELL HERRICK
WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Douglas Hedgpath, Dustin Hedgpath, and Mitchell Herrick ("Defendants") move to dismiss all claims against them.  In this § 1983 civil rights action, Plaintiff alleges that Defendants, correctional officers with the Maine Department of Corrections, acted with deliberate indifference towards the medical needs of inmate Christopher Nault, who passed away in 2018 at the Maine State Prison.  Because Plaintiff's allegations do not meet the high standard for showing that Defendants acted with deliberate indifference to Mr. Nault's serious medical needs, Plaintiff has not set forth a cognizable claim for relief under the Eighth Amendment and the claims against Defendants should be dismissed.  Further, even if Plaintiff has stated a claim under the Eighth Amendment, Plaintiff's claims should nonetheless be dismissed because, under the alleged facts here, Defendants are entitled to qualified immunity.

1

**MEMORANDUM OF LAW**

**Factual Allegations**

The narrative below is drawn from the complaint's factual allegations, which, for purposes of this motion, are assumed to be true to the extent they are well-pleaded and non-conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiff Christine Avery, the daughter and personal representative of the estate of Christopher Nault, brings this action on behalf of her father, who began serving a two-year sentence at the Maine State Prison ("the prison") on January 5, 2018. Compl. ¶¶ 3, 14.

As alleged in the complaint, Mr. Nault received medical care from Wellpath, the entity that contracts with the Maine Department of Corrections ("MDOC") to provide medical services to inmates at the prison. *See id.* ¶¶ 5, 24, 26, 38-39, 41-42, 49-51. As relevant here, at a chronic care visit on January 19, 2018, a medical provider noted that Mr. Nault had the Hepatitis C virus ("HCV"). *Id.* ¶ 15. On February 3, 2018, Mr. Nault "complain[ed] of dental pain and blood in his urine" at a medical visit, and on February 5, Mr. Nault had a tooth extracted due to "severe decay." *Id.* ¶¶ 24, 42. On March 12, 2018, Mr. Nault saw a medical provider because of blood in his urine. *Id.* ¶ 26. Later that month, Mr. Nault visited dental providers for a routine cleaning and a consult about dentures. *Id.* ¶¶ 46-47. On July 6, Mr. Nault had a chronic care follow-up visit with medical providers. *Id.* ¶ 34. Mr. Nault then had a dental exam on August 28, was seen by a dental provider on August 29, and had teeth extracted on September 5. *Id.* ¶¶ 49-51.

On October 24, 2018, Mr. Nault was seen for dental work after he reported removing bone fragments from his mouth. *Id.* ¶¶ 53-54. On November 12, 2018, Mr. Nault submitted a medical sick call slip in which he described having "a head cold with sore throat and congestion." *Id.* ¶ 55. In response, medical staff prescribed medications to Mr. Nault and made plans to order him "cold

packs." *Id*. ¶¶ 56-57.

At 9:00 p.m. on November 15, 2018, Defendant Dustin Hedgpath conducted a count of the inmates in the Close Echo-Pod, where Mr. Nault was housed, to ensure all inmates were identified, accounted for, and in their cells. *Id*. ¶¶ 58-59. Plaintiff alleges that during that count, Defendant Dustin Hedgpath noticed that Mr. Nault kept "missing" the light in his cell when he tried to turn it on. *Id*. ¶ 59. Defendant Dustin Hedgpath asked Mr. Nault if he was "ok," and Plaintiff does not allege whether Mr. Nault provided any response to that question. *Id*. According to another inmate, Mr. Nault allegedly said "I need medical" to Defendant Dustin Hedgpath, but at that time "or later in the evening," an unidentified correctional officer told Mr. Nault to "fill out a sick slip." *Id*. ¶ 60.

That night, according to Plaintiff, other inmates allege that Mr. Nault "kicked on his cell, used his emergency call button, and/or called out for help in the night," and that Defendants allegedly ignored him. *Id*. ¶ 61. Plaintiff also alleges that Defendants walked through Mr. Nault's pod before Mr. Nault's death every 30 minutes but "ignore[ed] each inmate in the pod." *Id*. ¶ 75. Early the next morning, at 1:00 a.m. and 3:00 a.m. on November 16, a correctional officer (Tristan Obremski) conducted overnight rounds to ensure inmates were on their bunks and there was "nothing out of the ordinary." *Id*. ¶¶ 73, 74. Plaintiff alleges that this correctional officer did not check to see if Mr. Nault was breathing during those rounds on November 16. *Id*. ¶ 74.

At 5:45 a.m. on November 16, 2018, Defendant Douglas Hedgpath conducted a count of the inmates in the pod and knocked on Mr. Nault's cell, but he did not respond. *Id*. ¶ 64. After several attempts to wake Mr. Nault, Defendant Douglas Hedgpath "shined his flashlight into the cell and noticed that Nault was unresponsive and positioned oddly on the bed." *Id*. Defendant Douglas Hedgpath then initiated a medical incident command system ("ICS"). *Id*. At 5:55 a.m.,

3

Defendants Mitchell Herrick, Dustin Hedgpath, and Tristan Obremski arrived at Mr. Nault's cell. *Id*. ¶ 65. Mr. Nault had dark brown matter that looked like "coffee ground[s]" on his face and in his cell. *Id*. ¶ 66. Defendants Douglas Hedgpath, Mitchell Herrick, and Obremski immediately transported Mr. Nault to the prison's medical department. *Id*. ¶ 67.

Upon arrival, Defendants Douglas Hedgpath and Herrick, together with Wellpath nurses, performed CPR on Mr. Nault for approximately 40 minutes. *Id*. Their efforts were unsuccessful, and Mr. Nault was pronounced dead at 6:41 a.m. *Id*. An autopsy showed that Mr. Nault died of bacterial meningitis. *Id*. ¶ 81. According to Plaintiff, Mr. Nault had bacteria in his body that was "associated with infection following a dental extraction." *Id*.

Based on these allegations, Plaintiff claims that Defendants acted with deliberate indifference to Mr. Nault's medical needs "in the hours between 21:00 [on November 15, 2018] and when Nault was found dead in his cell at 05:45 hours [on November 16, 2018.]" *Id*. ¶ 94.

Defendants move to dismiss Plaintiff's claims against them because Plaintiff's allegations fail to state a claim for relief under the Eighth Amendment. Plaintiff has failed to allege facts demonstrating that any of the Defendants acted with deliberate indifference to Mr. Nault's serious medical needs. Plaintiff does not allege that, prior to the morning of Mr. Nault's death, Defendants knew of an objectively serious medical need that was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Abernathy v. Anderson*, 984 F.3d 1, 6 (1st Cir. 2020) (cleaned up). Further, Plaintiff's allegations do not show Defendants acted with "wanton disregard" or "criminal recklessness" to Mr. Nault's needs, given upon learning of Mr. Nault's condition on the morning of November 16, they immediately sought medical attention for him. *Id*. (cleaned up). Additionally, even if Plaintiff had stated a cognizable constitutional claim, Defendants would be entitled to qualified immunity. Defendants did not violate a clearly

established right of Mr. Nault, and an objectively reasonable correctional officer in Defendants' positions would not have known that their conduct violated the law. Plaintiff's claims are therefore barred and should be dismissed.

**Legal Standard**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). The Court engages in a two-step analysis for Rule 12(b)(6) motions.

First, the Court should "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Guadalupe-Baez*, 819 F.3d at 514 (cleaned up). In this first step, the Court should identify and disregard statements in the complaint that "merely offer legal conclusion[s] couched as fact or [t]hreadbare recitals of the elements of a cause of action." *Ocasio-Hernandez v. Fortuňo-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678) (cleaned up). Second, the Court should determine whether "the well-pleaded facts, taken in their entirety, permit the reasonable inference that the defendant is liable for the misconduct alleged." *Guadalupe-Baez*, 819 F.3d at 514 (cleaned up). If, based on the Court's "judicial experience and common sense," the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed. *Iqbal*, 556 U.S. at 679.

**Argument**

I. **Plaintiff Has Failed to Plead A Cognizable Eighth Amendment Claim Against Defendants**

The Eighth Amendment guarantees an individual the right to be free from cruel and unusual punishment. U.S. Const. amend. VIII; *see Ingraham v. Wright*, 430 U.S. 651, 664-71 (1977). It

is well-established that "[a]fter incarceration, only the 'unnecessary and wanton infliction of pain,' constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham*, 430 U.S. at 670 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (citation omitted)); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986). As the Supreme Court recognized in *Estelle v. Gamble*, 429 U.S. 97 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain [] proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (citation and quotation marks omitted).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106; *see also Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014). "[T]o prove an Eighth Amendment violation, a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." *Kosilek*, 774 F.3d at 82.

An objectively "serious medical need" is "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (cleaned up). Subjective deliberate indifference to such need, in turn, "requires evidence that the failure in treatment was purposeful." *Id*. at 83. Subjective intent may "be exhibited by a wanton disregard to a prisoner's needs," but "such disregard must be akin to criminal recklessness, requiring consciousness of impending harm, easily preventable." *Id*. (cleaned up); *see also Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993) ("The obvious case would be a denial of needed medical treatment in order to punish the inmate."); *Feeney v. Corr. Med. Services, Inc.*, 464 F.3d 158, 162 (1st Cir. 2006) (cleaned up) ("[D]eliberate indifference may also reside in wanton decisions to deny or delay care, where the action is recklessness, not in the

6

tort law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable.").

"[P]rison administrators need only have responded reasonably to the risk." *Kosilek*, 774 F.3d at 84 (cleaned up). A reasonable response to a known risk negates deliberate indifference, regardless of whether harm is averted, and even a negligent response to a known risk "that was colorable and taken in good faith might still be enough to negate deliberate indifference." *Burrell v. Hampshire Cty.*, 307 F.3d 1, 8 (1st Cir. 2002).

### A. Plaintiff has failed to state a deliberate indifference claim

To state a claim of deliberate indifference, Plaintiff must show that Defendants acted with a mental state akin to criminal recklessness and consciously disregarded an excessive risk to Mr. Nault's health. *Farmer v. Brennan*, 511 U.S. 825, 837, 839-40 (1994).

As applied here, Plaintiff must allege, through well-pleaded facts, that each of the Defendants acted with "wanton disregard" to Mr. Nault's serious medical needs. *See Abernathy*, 984 F.3d at 6; *see also Leavitt v. Corr. Med. Services, Inc.*, 645 F.3d 484, 502 (1st Cir. 2011) (holding that plaintiff had not established that "*each* CMS defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that *each* defendant did, in fact, draw the inference," which was required to show deliberate indifference (emphasis in original, cleaned up)). Plaintiff's thin allegations, however, do not meet this high standard. Because Plaintiff has failed to state a claim of deliberate indifference against Defendants, the Court should dismiss the claims against them.

In the first step of the Court's Rule 12(b)(6) analysis, the Court should disregard and not credit Plaintiff's allegations that are "naked assertion[s] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (cleaned up), and "legal conclusion[s] couched as fact," *Ocasio-Hernandez*,

640 F.3d at 12 (cleaned up).  Plaintiff makes several such allegations, where the assertions of fact lack development or simply have no connection to the Defendants.

For instance, Plaintiff broadly alleges that other inmates heard Mr. Nault "kick[] on his cell, use[] his emergency call button, and/or call[] out for help in the night, but the CO Defendants ignored him."  Compl. ¶ 61.  This allegation, however, fails to connect any of Mr. Nault's alleged actions to knowledge by the Defendants.  Plaintiff does not allege that Defendants observed or heard Mr. Nault take such measures, and they therefore could not have "ignored" him.  *Id*.  Nor does Plaintiff allege any actual conduct by a specific Defendant that would constitute "ignor[ing]" these events.  The allegations are accordingly no more than "naked assertions" that should be disregarded by the Court and that fail to put Defendants on notice of what specific conduct is alleged to have violated Mr. Nault's rights.  *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (cleaned up)).

Nevertheless, even assuming the allegation to be true, it does not show that Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," or that Defendants actually drew that inference.  *Farmer*, 511 U.S. at 837; *see also Ruiz-Rosa v. Rullan*, 485 F.3d 150, 156 (1st Cir. 2007) ("[A] prison official subjectively must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (quotation marks omitted)).  Nor does the allegation show that any of the Defendants acted with criminal recklessness or "actual knowledge of impending harm."  *Feeney*, 464 F.3d at 162 (cleaned up).

Additionally, Plaintiff has failed to allege facts demonstrating that any of the Defendants knew that Mr. Nault had an objectively serious medical need "in the hours between" the 9:00 p.m. count on November 15, 2018, and the 5:45 a.m. count on November 16.  Compl. ¶ 94.  Plaintiff

summarily alleges that Mr. Nault was "known to be incoherent" on November 15, 2018, but she fails to allege that *Defendants* had actual knowledge that Mr. Nault was incoherent on November 15, or any other time relevant to Plaintiff's claims. Compl. ¶ 59. While Mr. Nault received medical care before his death, Plaintiff does not allege that any of the Defendants were involved in that care or had knowledge of Mr. Nault's medical condition. *See Braga v. Hodgson*, 605 F.3d 58, 61 (1st Cir. 2010) (affirming summary judgment for defendant Sheriff where there was "no evidence of the Sheriff's personal involvement with or knowledge of [plaintiff's] medical care"); *see also Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999) ("It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions.").

Similarly, while Plaintiff alleges that on November 12, Mr. Nault submitted a medical sick call slip complaining of "a head cold with sore throat and congestion," Plaintiff does not allege that Defendants knew about this medical request or observed Mr. Nault with symptoms of an illness or in need of medical care. *Id*. ¶ 55. Even if Defendants had known that Plaintiff complained of a head cold on November 12 (which, again, Plaintiff does not even allege), a head cold is not a serious medical need that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Leavitt*, 645 F.3d at 497; *see also Abernathy*, 984 F.3d at 7-10 (affirming summary judgment for corrections officials where plaintiff failed to establish that his injuries (consisting of "cuts, bruises, swelling, and some bleeding,") "were significant enough to give rise to a serious medical need" because no reasonable jury could conclude that those injuries "posed a substantial risk of future harm or were so obvious that even a lay person would recognize the need for a doctor's attention") (collecting cases)).

Further, Plaintiff's allegations fail to demonstrate that Defendants acted with "wanton disregard" to Mr. Nault's serious medical needs. *See Ocasio-Hernandez*, 640 F.3d at 12;

*Abernathy*, 984 F.3d at 6.  Plaintiff alleges that Defendants walked through Mr. Nault's housing pod "in the hours before Nault's death every 30 minutes" and that they did not "observ[e]" inmates at the time.  Compl. ¶ 75.  But Plaintiff does not allege that Defendants were required to observe the inmates during these 30-minute walk-throughs; that Mr. Nault gave indications of a medical need or "substantial risk of serious harm" during those walk-throughs; or that Defendants disregarded any such need or risk.  *Farmer*, 511 U.S. at 837.  Nor does Plaintiff allege how any of the Defendants allegedly "ignor[ed]" inmates in the pod.  Compl. ¶ 75.  Moreover, Plaintiff does not allege facts demonstrating that Defendants intentionally or purposefully denied Mr. Nault access to medical care or that Defendants deprived Mr. Nault of medical attention to punish him.  *Feeney*, 464 F.3d at 162 (reasoning that the deliberate indifference prong "requires evidence that the failure in treatment was purposeful"); *see also Feeney*, 464 F.3d at 162.

For these reasons, Plaintiff's allegations fail to state a cognizable claim for relief under the Eighth Amendment.  Plaintiff's specific claims against Defendants fare no better.  They do not establish that Defendants' actions fall within the "narrow band of conduct" that constitutes deliberate indifference.  *Feeney*, 464 F.3d at 162.  Thus, Plaintiff's claims should be dismissed.

    1. <u>Plaintiff fails to state a deliberate indifference claim against Defendant Dustin Hedgpath</u>

Beginning with Plaintiff's claims against Defendant Dustin Hedgpath, Plaintiff alleges that at 9:00 p.m. on November 15, 2018, Mr. Nault was in his cell when Defendant Dustin Hedgpath performed a count to ensure all inmates were present, identified, and in their cells.  Compl. ¶¶ 58-59.  At that time, Mr. Nault kept missing the light in his cell when he tried to turn it on, and Defendant Dustin Hedgpath asked Mr. Nault if he was "ok."  *Id*. ¶ 59.  According to another inmate, Mr. Nault allegedly said "I need medical" to Defendant Dustin Hedgpath, but at that time "or later in the evening," an unidentified correctional officer told Mr. Nault to "fill out a sick slip."

10

*Id*. ¶ 60.  Later, at 5:55 a.m. on November 16, Defendant Dustin Hedgpath arrived at Mr. Nault's cell in response to a medical ICS initiated by Defendant Douglas Hedgpath.[1]  *Id*. ¶¶ 64-65.

Plaintiff's sparse allegations against Defendant Dustin Hedgpath fail to show deliberate indifference to a serious medical need.  First, none of Plaintiff's allegations establish that Defendant Dustin Hedgpath knew that Mr. Nault had a serious medical need during his sole interaction with Mr. Nault at 9 p.m. on November 15, 2018.  To the contrary, Plaintiff alleges only that Defendant Dustin Hedgpath observed Mr. Nault "miss" the light in his cell and then asked Mr. Nault if he was "ok."  Compl. ¶ 59.  Plaintiff does not allege whether Mr. Nault provided any response to that question or what that response may have been, nor does Plaintiff make any claims that Defendant Dustin Hedgpath knew Mr. Nault had a serious medical need or was experiencing a medical emergency at that time.  There are several reasons unrelated to a medical need that could explain why Mr. Nault allegedly missed the light in his cell.

Similarly, while Plaintiff alleges that an inmate heard Mr. Nault say "I need medical" to Defendant Dustin Hedgpath, Plaintiff does not allege what actions Defendant Dustin Hedgpath took in response to that alleged statement or how Defendant Dustin Hedgpath would have known that Mr. Nault had a serious medical need rather than concluding he was tired, having trouble seeing in the dark, or groggy from being recently awakened.  *Id*. ¶ 60.  Plaintiff alleges only that an unidentified correctional officer told Mr. Nault to "fill out a sick slip" at some time that evening.  *Id*.  Accordingly, Plaintiff has failed to allege Defendant Dustin Hedgpath knew Mr. Nault had a

---

[1] Plaintiff also claims that Defendant Dustin Hedgpath "recalled a prisoner ringing the emergency call button the evening of November 15-16, 2018," and admitted during an interview after Mr. Nault's death that "he heard some prisoners talking about Nault calling out for medical help during the night and being denied 'medical.'" Compl. ¶¶ 62-63.  Plaintiff does not allege, however, that Defendant Dustin Hedgpath recalled an inmate using the emergency call button in Mr. Nault's housing pod, rather than in one of the many other pods.  Nor does Plaintiff make any allegations that Defendant Dustin Hedgpath overheard this discussion among inmates before Mr. Nault was found unresponsive in his cell on November 16, 2018.

11

medical need that was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Abernathy*, 984 F.3d at 6 (cleaned up), or that he acted in "wanton disregard" to such need, *Kosilek*, 774 F.3d at 83 (cleaned up), or otherwise had "actual knowledge of impending harm," *Feeney*, 464 F.3d at 162 (cleaned up).  Therefore, Plaintiff has not stated a claim against Defendant Dustin Hedgpath.

In summary, Plaintiff has not alleged facts showing that Defendant Dustin Hedgpath acted with "wanton disregard" to Mr. Nault's needs or a mental state "akin to criminal recklessness, requiring consciousness of impending harm, easily preventable." *Kosilek*, 774 F.3d at 83 (cleaned up).  As argued above, Plaintiff broadly alleges that inmates heard Mr. Nault "kick[] on his cell, use[] his emergency call button, and/or call[] out for help in the night."  Compl. ¶ 61.  Plaintiff does not allege that Defendant Dustin Hedgpath had actual knowledge of any of those alleged actions by Mr. Nault or how he allegedly ignored such an event.  Therefore, it is insufficient to set forth an allegation of fact against Defendant and it should be disregarded.  Consequently, Plaintiff has failed to allege "sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Guadalupe-Baez*, 819 F.3d at 514.  Plaintiff's allegations fall far short of what is required to assert a cognizable constitutional claim against Defendant Dustin Hedgpath.

For these reasons, Plaintiff has failed to state a claim for deliberate indifference and the Court should dismiss the claims against Defendant Dustin Hedgpath.

2. <u>Plaintiff fails to state a claim for deliberate indifference against Defendant Douglas Hedgpath</u>

Turning to Plaintiff's claims against Defendant Douglas Hedgpath, Plaintiff alleges that he conducted a count of inmates in the pod at 5:45 a.m. on November 16, 2018, *id*. ¶ 64; that he found Mr. Nault unresponsive in his cell at that time, *id*.; that he immediately initiated a medical ICS at the prison, *id*.; and that he assisted in performing CPR on Mr. Nault until he was pronounced dead

12

at 6:41 a.m. on November 16, *id*. ¶ 67.

Plaintiff's allegations against Defendant Douglas Hedgpath fail to state a cognizable claim for relief under the Eighth Amendment.  As with Plaintiff's allegations against the other Defendants, Plaintiff has failed to plead facts showing that Defendant Douglas Hedgpath deprived Mr. Nault of medical care for a serious medical need.  None of the above allegations suggest that Defendant Douglas Hedgpath had any contact or interactions with Mr. Nault before conducting a count of the inmates on the morning of November 16.  Further, upon discovering Mr. Nault at that time, the allegations demonstrate only that Defendant Douglas Hedgpath promptly sought medical help for Mr. Nault.  *Id*. ¶ 64.  He therefore did not recklessly disregard Mr. Nault's medical needs with actual knowledge or "consciousness of impending harm."  *Kosilek*, 774 F.3d at 83.

In summary, Plaintiff has not alleged facts showing Defendant Douglas Hedgpath had knowledge of an objectively serious medical need that was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," and that he disregarded such a need. *Kosilek*, 774 F.3d at 82.  Nor has Plaintiff asserted that Defendant Douglas Hedgpath was aware of an "actual risk of harm faced by the plaintiff-inmate who does not receive the medical attention that he requests and genuinely needs."  *Abernathy*, 984 F.3d at 7.  To the contrary, Plaintiff's allegations show that Defendant Douglas Hedgpath "responded reasonably to the risk," and not with deliberate indifference to Mr. Nault's needs.  *Kosilek*, 774 F.3d at 84 (cleaned up).

Plaintiff has therefore failed to allege a claim of deliberate indifference against Defendant Douglas Hedgpath.  For these reasons, the Court should dismiss Plaintiff's claims against him.

   3. Plaintiff fails to state a deliberate indifference claim against Defendant Herrick

Plaintiff alleges that Defendant Herrick arrived at Mr. Nault's cell at 5:55 a.m. on November 16 in response to a medical ICS and assisted in performing CPR on Mr. Nault until he

was pronounced dead at 6:41 a.m.  *Id*. ¶¶ 64-65, 67.  Plaintiff also alleges that Defendant Herrick had noticed over the previous month that Mr. Nault's "depth perception was off and he had a hard time turning on his light in the morning."  *Id*. ¶ 72.

Consistent with Plaintiff's allegations against Defendants Dustin Hedgpath and Douglas Hedgpath, Plaintiff has failed to allege that Defendant Herrick knew that Mr. Nault had a serious medical need and ignored a substantial risk of serious harm to Mr. Nault.  Plaintiff does not allege that Defendant Herrick had any interactions with Mr. Nault on November 15, 2018, until the next morning when he assisted others with performing CPR.  While Plaintiff alleges that Defendant Herrick noticed that Mr. Nault's depth perception was "off" and he had a hard time turning on his light in the morning, Plaintiff's allegations do not establish that Defendant knew Mr. Nault had a medical need that "posed a substantial risk of future harm or [was] so obvious that even a lay person would recognize the need for a doctor's attention," or that Defendant disregarded such a risk or need.  *Abernathy*, 984 F.3d at 10.  Plaintiff does not allege facts demonstrating that Defendant Herrick acted with criminal recklessness or "consciousness of impending harm, easily preventable."  *Kosilek*, 774 F.3d at 83 (cleaned up).  Plaintiff has failed to allege facts showing Defendant Herrick deprived Mr. Nault of medical attention for a serious medical need.

Thus, Plaintiff's allegations fail to state a claim for deliberate indifference against Defendant Herrick.  For these reasons, Plaintiff's claims against him should be dismissed.

**II.       Plaintiff's Claims Against Defendants Are Barred by Qualified Immunity**

When faced with a § 1983 claim, a government official may raise the defense of qualified immunity to seek "protection from civil damages liability for actions taken under color of state law."  *Gray v. Cummings*, 917 F.3d 1, 9 (1st Cir. 2019); *see also Taylor v. Barkes*, 575 U.S. 822, 135 S. Ct. 2042, 2044 (2015).  A government official is entitled to qualified immunity "when his

actions, though causing injury, did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 10 (quoting *Conlogue v. Hamilton*, 906 F.3d 150, 154 (1st Cir. 2018)) (quotation marks omitted). The protection afforded by qualified immunity "attaches to all but the plainly incompetent or those who knowingly violate the law." *Gray*, 917 F.3d at 9-10 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (quotation marks omitted).

The Supreme Court has "emphasized the importance of resolving immunity questions at the earliest possible stage in litigation." *Haley v. City of Boston*, 657 F.3d 39, 47 (1st Cir. 2011) (cleaned up). A motion to dismiss is therefore a proper vehicle to assert the defense of qualified immunity. *See Guzman-Rivera v. Rivera-Cruz*, 98 F.3d 664, 667 (1st Cir. 1996) (holding that a defendant may raise qualified immunity in a motion to dismiss and that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." (quotation marks and citation omitted)); *see also Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 37 (1st Cir. 2011) (holding that defendants were entitled to qualified immunity at the motion to dismiss stage where the plaintiff failed to properly allege a constitutional claim against defendants).

To determine whether a government official is entitled to qualified immunity, a court must engage in a two-part analysis:

> The court must determine whether the defendant violated the plaintiff's constitutional rights and then must determine whether the allegedly abridged right was "clearly established" at the time of the defendant's claimed misconduct.

*Gray*, 917 F.3d at 10 (quoting *Conlogue*, 906 F.3d at 154) (quotation marks omitted). The second part of the qualified immunity analysis has two components:

> First, the plaintiff must identify either "controlling authority" or a "consensus of cases of persuasive authority sufficient to send a clear signal to a reasonable official

15

> that certain conduct falls short of the constitutional norm.
>
> Second, the plaintiff must demonstrate that an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law.

*Gray*, 917 F.3d at 9-10 (quoting *Alfano v. Lynch*, 847 F.3d 71, 75 (1st Cir. 2017)) (citation and quotation marks omitted).

In this matter, Defendants are entitled to qualified immunity from Plaintiff's claims because Defendants' alleged actions did not violate Mr. Nault's rights under the Eighth Amendment. Yet even assuming *arguendo* that Defendants violated Mr. Nault's Eighth Amendment rights, Plaintiff cannot establish that any allegedly abridged right was clearly established. The Court should therefore conclude that Defendants are immune from Plaintiff's claims and grant their motion to dismiss.

 A. <u>Defendants did not violate Mr. Nault's constitutional rights</u>

With respect to the first part of the qualified immunity analysis, this Court must "determine whether the defendant violated the plaintiff's constitutional rights." *Gray*, 917 F.3d at 10 (quoting *Conlogue*, 906 F.3d at 154) (quotation marks omitted).

As shown above, Plaintiff has failed to allege facts demonstrating that Defendants acted with deliberate indifference to Mr. Nault's serious medical need. Plaintiff has failed to state a claim for deliberate indifference because Plaintiff has not alleged facts showing that Defendants acted with "wanton disregard" to Mr. Nault's serious medical need or purposefully denied him medical care. *Kosilek*, 774 F.3d at 83. Because Plaintiff fails to allege facts showing Defendants deprived Mr. Nault of medical attention for a serious medical need, Plaintiff has failed to assert an Eighth Amendment claim against them. *Abernathy*, 984 F.3d at 10.

Thus, Defendants are immune from Plaintiff's claims and they should be dismissed.

B. <u>Defendants did not violate any right of Mr. Nault that was clearly established</u>

With respect to the second prong of the qualified immunity analysis, the Court must determine "whether the allegedly abridged right was 'clearly established' at the time of the defendant's claimed misconduct." *Gray*, 917 F.3d at 10 (quoting *Conlogue*, 906 F.3d at 154) (quotation marks omitted). Because Mr. Nault's allegedly abridged right in this matter was not clearly established, Defendants are entitled to qualified immunity.

Plaintiff does not allege facts demonstrating that Defendants violated a clearly established right of Mr. Nault. Plaintiff summarily alleges that Defendants were indifferent to Mr. Nault's medical needs "in the hours between" 9:00 p.m. on November 15, 2018, and 5:45 a.m. on November 16. Compl. ¶ 94. Plaintiff, however, does not allege any specific conduct by Defendants that constitutes "the unnecessary and wanton infliction of pain [] proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (citation and quotation marks omitted); *see also Leite v. Bergeron*, 911 F.3d 47, 53 (1st Cir. 2018) (affirming summary judgment for a correctional defendant where plaintiff's allegation that defendant failed to adequately perform "rounds" did not establish a claim of deliberate indifference). Because Plaintiff has failed to allege facts showing that Defendants violated a right of Mr. Nault that was clearly established under the Eighth Amendment, Defendants are entitled to qualified immunity and Plaintiff's claims against them should be dismissed.

Nor can Plaintiff demonstrate that there was sufficient authority to "send a clear signal" to a reasonable official that Defendants' conduct fell below the constitutional norm and that "an objectively reasonable official" in Defendants' position "would have known that his conduct violated that rule of law." *Gray*, 917 F.3d at 9-10 (quoting *Alfano v. Lynch*, 847 F.3d at 75). Even taking the allegations in the complaint as true, those allegations demonstrate that Defendants acted

17

reasonably and are entitled to qualified immunity. Plaintiff's allegations do not establish that Defendants would have known that their alleged conduct violated the law. Because Plaintiff seeks only money damages and Defendants are entitled to qualified immunity from such claims for damages, the Court should dismiss Plaintiff's claims against Defendants.

## Conclusion

For the above reasons, Defendants respectfully request that the Court grant Defendants' motion and dismiss all claims against them.

Respectfully submitted,

Dated: February 16, 2021

AARON M. FREY
Attorney General

/s/ Alisa Ross
Alisa Ross, Bar No. 4688
Assistant Attorney General
Office of Attorney General
6 State House Station
Augusta, ME  04333-0006
Tel. (207) 626-8800

*Attorney for Defendants Dustin Hedgpath, Douglas Hedgpath, and Mitchell Herrick*