UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| CHRISTINE AVERY, *as Personal Representative of the Estate of Christopher Nault*,<br><br>PLAINTIFF<br><br>v.<br><br>WELLPATH, LLC, *f/k/a Correct Care Solutions*; DOUGLAS HEDGPATH; DUSTIN HEDGPATH; MITCHELL HERRICK; AND TRISTAN OBREMSKI,<br><br>DEFENDANTS | CIVIL NO. 2:20-CV-428-DBH |

**DECISION AND ORDER ON MOTIONS TO DISMISS**

This is a lawsuit against a company that contracted with the Maine Department of Corrections to provide medical care and treatment to Maine State Prison inmates, as well as against individual named corrections officers at that institution. It claims that the defendants violated the Eighth Amendment by committing cruel and unusual punishment in their treatment of inmate Christopher Nault. Nault suffered from Hepatitis C and severe dental infections, and died in his cell on November 16, 2018, from bacterial meningitis. Some bacteria in his brain were associated with infection following a dental extraction, of which Nault had several.

The lawsuit is brought by Nault's daughter as personal representative of his estate. The individual corrections officers have moved to dismiss the

Complaint against them for failing adequately to allege deliberate indifference to Nault's serious medical needs and on the basis that they are protected by qualified immunity.  I **GRANT** the motion as to the defendant Obremski and **DENY** it as to the other corrections officers.

The applicable legal standard for Eighth Amendment liability is clear:

> The Supreme Court has held that deliberate indifference on the part of prison personnel to the "serious medical needs" of an inmate constitutes cruel and unusual punishment because it "offend[s] 'evolving standards of decency that mark the progress of a maturing society.'"

Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).

The defendant correction officers here argue that under the standards of Iqbal and Twombly the allegations of this Complaint are insufficient to support the deliberate indifference claim.  I disagree except with respect to the defendant Obremski.

With respect to Obremski, the Complaint says that he and another defendant corrections officer arrived at inmate Nault's cell at 5:55 a.m. on November 16, ¶ 65, turned on a body camera and began recording, ¶ 66. Obremski and other corrections officers then "transported Nault to medical," ¶ 67, but he could not be revived.  The Complaint also states that

> Obremski told Maine State Police that the overnight rounds he conducted at 01:00 and 03:00 hours were intended to make sure the prisoner is on his bunk and a body is in the cell with nothing out of the ordinary.  However, video of the rounds conducted by the COs does not show that anyone stopped by long enough to observe Nault or anything in his cell.  Obremski did not check to see if Nault was breathing during his two rounds on the overnight of November 15-16, 2018.

Compl. ¶¶ 73-74.  That is all the Complaint says about Obremski, his knowledge, and behavior.  Whether or not Obremski's behavior as a corrections officer on the night in question was professionally adequate, nothing in these assertions shows that Obremski knew of Nault's serious medical needs or that he was deliberately indifferent to them.

Setting aside what the defendant Wellpath and its medical personnel are alleged to have known, the Complaint makes the following assertions about the other defendant correction officers:

> CO Dustin Hedgpath performed the prisoner count at 21:00 hours.  Dustin Hedgpath admitted to Maine State Police that Nault "kept missing" the light in his cell that night when he tried to turn it on at 21:00 hours.  Dustin Hedgpath asked Nault if he was ok, but by this time Nault was known to be incoherent.  According to another inmate, at this time Nault said to Dustin Hedgpath, "I need medical."  At this time or later in the evening, a CO told Nault to "fill out a sick slip."  Upon information and belief based on the reports of other prisoners, Nault kicked on his cell, used his emergency call button, and/or called out for help in the night, but the CO Defendants ignored him.  Dustin Hedgpath recalled a prisoner ringing the emergency call button the evening of November 15-16, 2018.  Dustin Hedgpath admitted that he heard some prisoners talking about Nault calling out for medical help during the night and being denied "medical."

Id. ¶¶ 59-63.  "The CO Defendants walked through the Close E Pod in the hours before Nault's death every 30 minutes.  Instead of observing prisoners, the COs walked by with overt and deliberate indifference, ignoring each inmate in the pod."  Id. ¶ 75.[1]  "As of 21:00 hours on November 15, 2018, Douglas Hedgpath had actual knowledge that Nault appeared to need medical assistance; that he was incoherent; and that he could not perform the simple task of turning on the

---

[1] These patrols seem to be different from Obremski's overnight rounds at 1 and 3 a.m.

3

light in his cell." Id. ¶ 92.  In addition, corrections officer "Herrick noticed over the past month or so that Nault's depth perception was off and he had a hard time turning on his light in the morning." Id. ¶ 72.

These allegations may be minimal as to what the individual corrections officers knew about Nault's serious medical needs, and these defendants may or may not later to be able to show that they are entitled to summary judgment, but the allegations of the Complaint are adequate to avoid dismissal of the Eighth Amendment claim.[2]

Finally, I reject the defendants' argument that the Complaint shows that they are entitled to qualified immunity.  The law is well-established on the standards for a deliberate indifference claim, and there is nothing in this Complaint to suggest that these corrections officers allegedly abridged a right that was somehow not "clearly established." Gray v. Cummings, 917 F.3d 1, 10 (1st Cir. 2019).

Accordingly, the defendant Obremski's motion to dismiss is **GRANTED**; the motion of the other defendants is **DENIED**.

**SO ORDERED.**

**DATED THIS 24TH DAY OF MAY, 2021**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[2] I observe that, according to the First Circuit, state of mind, "such as the existence of deliberate indifference usually presents a jury question." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).