## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **CHRISTINE AVERY,** | ) | |
| **as Personal Representative of** | ) | |
| **the Estate of Christopher Nault,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 2:20-cv-00428-NT** |
| | ) | |
| **WELLPATH, LLC, et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## MEMORANDUM DECISION AND ORDER ON MOTION TO AMEND

In a motion filed more than seventeen months after she initiated this matter, Plaintiff Christine Avery seeks leave to amend her complaint to supplement her factual allegations, add new claims, and join thirteen new defendants. *See* Motion for Leave to File an Amended Complaint ("Motion") (ECF No. 49). Because Avery has not shown a good reason for waiting so long to alter her case so drastically, I deny the motion.

## I. Background

This matter arises from the death of Avery's father Christopher Nault while he was an inmate at the Maine State Prison. *See* Complaint (ECF No. 1). In her capacity as personal representative of Nault's estate, Avery filed her complaint in November 2020 asserting federal civil rights claims against prison healthcare provider Wellpath, LLC, and Maine Department of Corrections (MDOC) officers Douglas Hedgpath, Dustin Hedgpath, Mitchell Herrick, and Tristan

1

Obremski.  *See id.*  After the claims against Obremski were dismissed and all the remaining defendants filed their answers, *see* ECF Nos. 13, 14, 23, 29, 30, the Court issued a scheduling order in June 2021 setting pretrial deadlines, *see* ECF No. 31. Those pretrial deadlines were subsequently extended several times at the joint request of the parties; pertinent to the instant motion, the deadline for amendment of pleadings and joinder of parties was originally August 23, 2021, *see* ECF No. 31, but was extended to October 22, 2021, *see* ECF No. 33, and then further extended to January 20, 2022, *see* ECF No. 38.

On January 14, 2022, the Court granted the parties' joint motion to stay the pretrial deadlines to allow them to engage in private mediation.  *See* ECF No. 43. After that mediation proved unsuccessful, I met with the parties in April 2022 to discuss their proposal for reestablishing pretrial deadlines.  *See* ECF No. 48. I expressed concern about how far out their proposed deadlines were—in some instances further out than the standard deadlines would have been for a brand-new case—and about how little apparent progress there had been during the first year and a half.  In setting revised pretrial deadlines, "I warned the parties not to expect further extension."  *Id.* at 1.  I also declined to set a deadline for Avery to file her anticipated motion to amend but encouraged her to file it as soon as possible.  *See id.* at 2.  She did so a few days later.  *See* Motion at 1.

## II.  Legal Standard

"A motion to amend . . . will be treated differently depending on its timing and the context in which it is filed."  *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12

2

(1st Cir. 2004). In some circumstances, a party may amend its pleading as a matter of course; otherwise, as here, a party may amend its pleading only with the consent of the opposing party or leave of court. *See* Fed. R. Civ. P. 15(a)(1)-(2). When such leave is sought before the deadline for amendment of pleadings, it should be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a)(2).[1] Nevertheless, courts are not obligated to "mindlessly grant every request for leave to amend" and may deny leave "[w]hen the proffered amendment comes too late, would be an exercise in futility, or otherwise would serve no useful purpose." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006).

## III. Discussion

According to Avery, her proposed amendments are based on information that she uncovered while preparing for the ultimately unsuccessful mediation that took place in March 2022. *See* Motion at 3-4. She asserts that she learned of fraudulent business practices involving Wellpath's former chief executive and cost containment measures "believed to provide financial incentives to the company for depriving inmates like Nault of medication." *Id.* at 4. Based on this information, she seeks to add claims against two corporate entities closely related to Wellpath and eight of Wellpath's top executives. *See id.* at 4-5. She also seeks to add claims against the former commissioner of the Maine Department of Corrections, the former warden of

---

[1] The procedural posture of this motion is somewhat unusual because the deadline for amendment of pleadings and joinder of parties had not expired when the Court granted the parties' request for a two month stay for mediation but the deadline was not reestablished after that mediation proved unsuccessful. *See* ECF Nos. 38, 48. In any event, the parties agree that the leave freely given standard applies, so I will assume that to be so. *See* Motion at 6; MDOC Defendants' Opposition (ECF No. 50) at 1; Wellpath's Opposition (ECF No. 51) at 1.

the Maine State Prison, and a former deputy warden, whom she alleges "were directly responsible for supervising [corrections] staff and implementing policies, procedures, and contractual relationships between the prison and Wellpath."  *Id.* at 5. Additionally, she seeks to provide "additional detail about the deprivation of medical care suffered by Nault, including lab results that are conspicuously missing from his medical records." *Id.* at 6.

Avery acknowledges that there has been some delay in this case but argues that it was not undue because the extensions of the deadlines were mutually agreed upon to accommodate scheduling difficulties during the ongoing COVID-19 pandemic and to allow the parties to engage in mediation prior to engaging in full-fledged discovery.  *See id.* at 7.  She also argues that the Defendants should have identified the entities and individuals she now seeks to add in their initial disclosures and in response to her Freedom of Access Act (FOAA) requests; if they had done so, she avers that she would have likely moved to amend sooner or withheld her consent to further extension of the deadlines.[2]  *See* Motion at 5-6; Reply in Support of Motion for Leave to Amend ("Reply") (ECF No. 52) at 5.

The Defendants oppose Avery's proposed amendments, arguing, among other things, that she has not "offered sufficient justification for her delay in" seeking to amend her complaint in a manner that "would be tantamount to restarting the proceedings."  Wellpath's Opposition at 5 (cleaned up); *see* MDOC Defendants' Opposition at 2.  They also argue that they would be prejudiced by further delay in

---

[2] Avery admits that one of her proposed additional defendants—Richard Liberty, N.P.—was identified in initial disclosures.  *See* Motion at 5.

4

resolving this matter.   *See* Wellpath's Opposition at 10; MDOC Defendants' Opposition at 9-10.

The Defendants have the better argument.

Although I understand and accept that Avery is not responsible for all the delay in this matter and that many things—including the pandemic, the parties' scheduling difficulties, and the time it took to resolve various motions—were out of her control, the question is whether she can show a good reason for waiting seventeen months after filing her complaint to seek leave to radically expand her claims. *See Calderón-Serra v. Wilmington Trust Co.*, 715 F.3d 14, 20 (1st Cir. 2013) ("Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend."); *In re Lombardo*, 755 F.3d 1, 3-4 (1st Cir. 2014) (holding that a seventeen month delay between the filing of a complaint and a motion to amend was a considerable amount of time requiring an explanation).   I conclude that Avery has not shown a good reason for waiting so long and that allowing her amendments at this point would prejudice the Defendants.[3]

First, Avery is up front that her proposed amendments are not a result of new information learned during discovery, but rather information she "uncovered based on her own due diligence" while preparing for mediation earlier this year.   Motion at 3-4.   In such circumstances, I fail to see how anything that has happened so far in this case—whether it was the various motions, the agreed-upon extensions, or the

---

[3]  In light of this conclusion, I do not reach the Defendants' further arguments that Avery's proposed amendments should be denied on futility grounds.   *See* Wellpath's Opposition at 5-10; MDOC Defendants' Opposition at 4-8.

parties' agreement to put off discovery until after mediation—prevented Avery from exercising this due diligence until more than a year after she filed her complaint.[4] For example, she highlights the fact that she discovered there were documents missing from Nault's medical records and states that she raised the issue with the Defendants in February 2022.  *See* Reply at 5.  She does not, however, contest the Defendants' assertion that she was provided Nault's medical records before she even filed suit, *see* MDOC Defendant's Opposition at 4, which suggests that she could have discovered the purported missing records much earlier in the case.  Similarly, she does not explain why she waited more than a year to perform the unspecified research from which she learned of Wellpath's alleged corrupt cost cutting practices, which is particularly problematic because her current complaint already alleges that Nault's death was due, in part, to Wellpath's "overt attempt to save money on the cost of treatment."   Complaint ¶ 37.

Second, Avery has not provided sufficient information to support her argument that the Defendants should have identified the parties she now seeks to join in their initial disclosures and responses to her FOAA requests.  Without more evidence of what was sought in the FOAA requests and what was provided in the initial disclosures and FOAA responses, I cannot agree that the Defendants failed to provide

---

[4] Perhaps recognizing this, Avery suggests for the first time in her reply that she could not have moved to amend her complaint prior to receiving unredacted documents following the Court's entry of a confidentiality order in November 2021.  *See* Reply at 3.  Because she does not explain what critical information she learned from the unredacted documents or why she waited several more months before moving to amend her complaint, this point is unavailing.  *See, e.g., Kay v. N.H. Democratic Party*, 821 F.2d 31, 34 (1st Cir. 1987) (finding undue delay when a plaintiff offered no justification for waiting three months after new information came to light to seek to amend his complaint).  Likewise, her unexplained delay in investigating a Wellpath employee's name change until March 2022 does not carry the day.  *See* Reply at 3-4.

Avery with information to which she was entitled. *Cf. Richardson v. Yellen*, 323 F.R.D. 444, 448 (D.D.C. 2018) ("[Plaintiff] further argues that [Defendant] would not suffer prejudice [from his proposed amendments] because [it] should have disclosed the relevant facts in its Rule 26 initial disclosure.  Without more evidence, the Court cannot agree.   [Plaintiff] has not provided sufficient information to demonstrate that [Defendant] failed to provide him with evidence to which he was entitled." (cleaned up)).

Finally, allowing Avery to amend her complaint in such a significant manner after this case has been pending for so long would prejudice the Defendants.  Indeed, as the Defendants point out, adding new claims and more than a dozen new defendants would essentially restart this matter from square one, which would, in turn, erase any progress that the parties have made over the past year and a half and further delay resolution of this matter.[5]  *See* MDOC Defendants' Opposition at 9-10; Wellpath's Opposition at 10; *Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) (affirming the denial of a plaintiff's motion to amend his complaint where the amendment would have been "tantamount to restarting the proceedings, complete with new defendants . . . and an entirely new cause of action" and the plaintiff "had waited too long to alter the nature of the proceedings so drastically");

---

[5] I am not persuaded by Avery's attempt to downplay the prejudice to the Defendants by pointing out that she told them she would seek leave to amend if mediation did not work out—which was something that she also emphasized at oral argument.  *See* Motion at 2.  That the Defendants may not have been entirely surprised by her motion to amend does not render her proposed amendments any less impactful.  Moreover, it appears that the Defendants told her that they would likely oppose her motion to amend shortly after mediation.  *See* ECF No. 44 at 1 ("Plaintiff plans to file a motion to amend the complaint. [Defendants] have not been given the proposed amended complaint, but based on Plaintiff's description of the planned claims and defendants, [Defendants] believe that they will oppose the amendment.").

7

*In re Lombardo*, 755 F.3d at 4 ("Whatever the reason for the proceedings' protraction, [the movant] had ample time to seek leave to amend and had no reasonable basis in law or fact for waiting until seventeen months after filing the . . . complaint."); *Steir*, 383 F.3d at 12 ("Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.").

## IV.  Conclusion

For the foregoing reasons, the motion is ***DENIED***.


### *NOTICE*

***In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.***

***Failure to file a timely objection shall constitute a waiver of the right to review by the District Court and to any further appeal of this order.***


Dated: June 28, 2022

/s/ Karen Frink Wolf
United States Magistrate Judge